**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PATRICK INORIO | CASE NUMBER 1:20-cv- |
| Plaintiff | |
| vs. | COMPLAINT |
| WELLS FARGO BANK, N.A. | JURY TRIAL DEMANDED |
| Defendant | |

## <u>COMPLAINT</u>

NOW COMES the Plaintiff, Patrick Inorio, ("Plaintiff"), by and through his attorneys, Penelope N. Bach and Paul M. Bach of Bach Law Offices, Inc., and complaining of Wells Fargo Bank, N.A. ("Wells") states as follows:

### <u>PARTIES, JURISDICTION AND VENUE</u>

1.      Plaintiff, Patrick Inorio (collectively "Plaintiff" or "Inorio") is the owner of residential real property, located at and commonly known as 132 Jodi Lane, Bartlett, Illinois (the "Home") which he has maintained and occupied as his primary, principal residence at all times relevant to the Complaint.

2.      Wells Fargo Bank, N.A., ("Wells Fargo") is a national bank with its principal place of business located in South Dakota. Wells Fargo owns and maintains numerous bank branches in Illinois and is authorized to do business in Illinois.

3.      Wells Fargo was the prior servicer of a note (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan") each executed by Plaintiff.  *A copy of the Loan documents is attached as Exhibit 1.*

1

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

5.      This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

7.      This action is primarily filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

8.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

10.      Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

11.      Mortgage servicers are prohibited from failing "to comply with any other

obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

12.     Plaintiff asserts claims for relief against Wells Fargo for breaches of the specific rules under Regulation X as set forth, *infra* .

13.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.  Plaintiff also asserts a private right of action for the claimed breaches of provisions of the Bankruptcy Code pursuant to 11 U.S.C. § 105.

14.     Plaintiff also asserts state law claims for relief against Wells Fargo for breach of contract and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/1 *et seq.*

### FACTS SUPPORTING CAUSE OF ACTION

15.     On or about April 27, 2012, Plaintiff filed a petition for relief under Chapter 13 of Title 11 of the United States Code in the Bankruptcy Court for the Northern District of Illinois, captioned *Patrick Inorio*, and assigned Case No. 12-17295 (the "Bankruptcy").

16.     On or about June 29, 2017, Plaintiff received a discharge in the Bankruptcy and the Bankruptcy was subsequently closed on July 5, 2017.

17.     On September 10, 2012, Wells filed Proof of Claim 3-1 for the total amount of $279,977.58 with included an arrearage claim of $20,265.42.   The arrearage claim of $20,265.42 was paid in full during the Bankruptcy.

18.     During the course of the Bankruptcy, pursuant to the Bankruptcy Rules, Wells filed a Notice of Post Petition Mortgage Fees, Expenses and Charges (11/15/2012), seven

Notices of Notice of Mortgage Payment Change (1/29/2013, 5/31/2013, 12/31/2014, 5/10/2015, 1/6/2016, 9/15/2016 and 9/29/2016) and a Response to Notice of Final Cure (4/3/2017).  None of these notices related to real estate taxes (real estate tax years 2013 through 2016) and property insurance during the time period.  Wells subsequently paid these amounts and added these charges related to real estate taxes (real estate tax years 2013 through 2016) in the amount of $42,350.43 and property insurance of $6,150.00 to the loan of the Plaintiff incorrectly and in violation of Federal Rule of Bankruptcy Procedure 3002.1.

19.     Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(c), "The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred."

20.     Wells did not file any such Notice of Post Petition Mortgage Fees, Expenses and Charges in regards to real estate taxes paid, insurance paid or any other expenses paid including attorney fees during the Bankruptcy regarding the real estate taxes and insurance during the Bankruptcy or any time or thereafter.  As a result, pursuant to Federal Rules of Bankruptcy Procedure Wells was not entitled to the added charges related to real estate taxes (real estate tax years 2013 through 2016) in the amount of $42,350.43 and property insurance of $6,150.00 to the loan of the Plaintiff incorrectly.

21.     On or about December 4, 2017, Plaintiff, through counsel, sent three pieces of correspondence to Wells Fargo via Certified Mail each captioned "Request for Information Pursuant to 12 CFR § 1024.36" consisting of:

a. Correspondence requesting information related to the Loan including:

i. The owner and/or investor of the Loan;

ii. The value of and any property valuations of the Home;

iii. The date and amount of the last payment on the Loan;

iv. Reinstatement figures for the Loan if Wells Fargo deemed the Loan to be delinquent;

v. A copy of the most recent periodic statement for the Loan;

vi. A copy of any previous loss mitigation agreements regarding the Loan; and,

vii. A loss mitigation application ("RFI #1");

b. Correspondence requesting the loss mitigation options and programs that are available for the Loan ("RFI #2"); and,

c. Correspondence requesting information related to the Loan including:

i. A statement of the amount necessary to pay the Loan in full; and,

ii. A transaction history for the life of the Loan ("RFI #3").

***Copies of RFI #1, RFI #2, and RFI #3 (collectively, the "RFIs") are attached as Exhibit 2.***

22.      Plaintiff sent the RFIs to the address designated by Wells Fargo for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and requests for information pursuant to 12 C.F.R. § 1024.36(b) (the "Designated Address") via Certified Mail.

23.      Wells Fargo received RFI #1, RFI #2 and RFI #3 at the Designated Address on December 8, 2017.

24.      Wells Fargo failed to provide written notice to Plaintiff containing or consisting of an substantive response to any of the requests contained within the RFIs within the applicable statutory deadlines.

25.     On or about February 27, 2018, Plaintiff, through counsel, sent a notice of error to Wells Fargo at the Designated Address via Certified Mail captioned "Notice of Error under 12 CFR Section 1024.35" ("NOE #1"). *A copy of NOE #1 is attached as Exhibit 3*.

26.     Wells Fargo received NOE #1 at the Designated Address on March 3, 2018.

27.     Through NOE #1, Plaintiff alleged that Wells Fargo committed errors regarding his Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by: (1) Failing to provide timely, substantive responses to any of the RFIs; (2) claiming that Wells Fargo could not collect real estate taxes paid, insurance paid or any other expenses paid including attorney fees during the Bankruptcy and (3) failing to eliminate the Plaintiff's escrow account.

28.     Through NOE #1, Plaintiff claimed that Wells Fargo could not collect real estate taxes paid, insurance paid or any other expenses paid including attorney fees during the Bankruptcy and (3) failing to eliminate the Plaintiff's escrow account.

29.     Specifically, through Response to NOE #1, Wells Fargo failed to provide:

a.     The identity of the owner and/or investor for the Loan as originally requested through RFI #1;

b.     Any information related to the value of or any valuations of the Home performed by Wells Fargo as originally requested through RFI #1;

c.     Information related to the loss mitigation options and programs available on the Loan as originally requested through RFI #2; and,

d.     A statement of the amount necessary to pay the Loan in full within the applicable timeframe as originally requested through RFI #3.

30.    On or about August 22, 2018, Plaintiff, through counsel, sent a notice of error to Wells Fargo at the Designated Address via Certified Mail. ("NOE #2"). *A copy of NOE #2 is attached as Exhibit 4.*

31.    Wells Fargo received NOE #2 at the Designated Address.

32.    Through NOE #2, Plaintiff alleged that Wells Fargo committed errors regarding his Loan by: (1) Failing to provide timely, substantive responses to any of the RFIs; and by (2) Failing to provide timely, substantive responses to NOE #1.

33.    Wells Fargo wholly failed to address the error alleged in NOE #2 concerning (1) Failing to provide timely, substantive responses to any of the RFIs; (2) Failing to provide timely, substantive responses to NOE #1.

## IMPACT AND DAMAGES

34.    From December 2017 to July 2019 (17 months), the Debtor made payments to Wells Fargo of $1,451.86 each in the aggregate amount of $24,681.62 which although attempted were not returned to the Plaintiff and the Plaintiff does not have possession of these funds. These are funds paid by the Plaintiff to Wells Fargo and which remain in the possession Wells Fargo and were not turned over to the subsequent servicer.

35.    The Statements provided Wells Fargo during this time period show these funds as received and the Statements are therefore misleading and deceptive.

36.    Wells Fargo not adhering to the Bankruptcy Code has caused damages to the Plaintiff including legal fees and expenses by causing Plaintiff to submit requests for information and notices of error to Wells Fargo in an attempt to have them act in compliance with the with state and federal law and guidelines which has caused Plaintiff severe emotional distress driven

by fear and uncertainty in his financial well-being and his obligations which has resulted in loss

of sleep, anxiety, depression, embarrassment, and other significant harm.

37.     Throughout this entire frustrating ordeal, Plaintiff has simply wanted to be able

to enjoy the benefit of the Bankruptcy, be able to properly and accurately pay his taxes, and be

able to have certainty in his financial well being and obligations moving forward and have the

benefits of the "fresh financial start" the Bankruptcy was to afford him.

38.     As of today, the threat of foreclosure and continual attempts to collect erroneous

past due accounts continues to haunt Plaintiff.

39.     Plaintiff is left to question why Wells is allowed to get away with skirting their

obligations under federal law.

40.     The entire experience has imposed upon Plaintiff significant distrust, frustration

and distress, and has rendered Plaintiff hopeless about his ability to move forward.

## ADDITIONAL EVIDENCE OF A PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY WELLS FARGO

41.     Wells Fargo's actions are part of a pattern and practice of behavior in violation of

Inorio's rights and in abdication and contravention of Wells Fargo's obligations under the

mortgage servicing regulations set forth in Regulation X of RESPA.

42.     At the time of the filing of this Complaint, consumers nationwide have filed many

consumer complaints against Wells Fargo, specifically concerning the issue identified on the

CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to

mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online

database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

43.     Plaintiff have reviewed the CFPB's consumer complaint database and have

identified other alleged RESPA violations by Wells Fargo against other borrowers. In particular,

Plaintiff has reviewed consumer complaint narratives concerning the issues identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. The complaints evidence conduct which demonstrates that Well Fargo has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

44.     As a result of the conduct, actions, and inaction of Wells, Plaintiff has suffered various types of damages as set forth herein including specifically, the loss of credit; the loss of time and other frustration and aggravation associated with telephone calls; time and money expended meeting with his attorneys; tracking the status of his home; and the mental and emotional pain related to the continual stress of potential homelessness, anguish, humiliation, and embarrassment.

45.     Due to the conduct of the Wells, Plaintiff was forced to retain counsel.

## COUNT ONE:

## MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E)
### (Failure to properly respond to requests for information)

46.      Plaintiff restates and incorporates his statements and allegations contained in paragraphs 1 through 45 in their entirety, as if fully rewritten herein.

47.      12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan.  Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

48.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that: [A] servicer must respond to an information request by either:

      i.  Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

      ii.  Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

49.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that: A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

50.     Each of the RFIs met the definition of a request for information.

51.     Plaintiff sent each of the RFIs to Wells Fargo at the Designated Address

52.     Wells Fargo received each of the RFIs at the Designated Address within a week of mailing.

53. Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Wells Fargo was generally required to provide written correspondence to Plaintiff in response to each of the RFIs "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in each of the RFIs, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

54. Further, pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(A), Wells Fargo was required to provide written correspondence to Plaintiff in response to the request for the identity of and contact information for the owner and/or investor of the Loan as requested through RFI #1 "not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d the] information request" in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

55. Wells Fargo failed to provide written notice to Plaintiff containing or consisting of a substantive response to any of the requests contained within the RFIs as required by 12 C.F.R. § 1024.36(d)(1) within the applicable statutory deadlines contained in 12 C.F.R. § 1024.36(d)(2)(i).

56. Because of Wells Fargo's failure to respond to each of the RFIs, Plaintiff incurred fees and costs to have counsel prepare and send NOE #1 on his behalf to Wells Fargo at the Designated Address, which would not have been necessary but for Wells Fargo's failure to properly respond to the RFI.

57. Wells Fargo's actions, in failing to provide proper written correspondence to Plaintiff in response to each of the RFIs by their respective response deadlines, constitutes *at least three (3) willful violations of 12 C.F.R. § 1024.36(d)*, one for each of the RFIs to which Wells Fargo failed to properly respond.

11

58.     Wells Fargo's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff' rights.

59.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees, including, but not limited to incurring costs and fees for the preparation and mailing of NOE #1 and NOE #2 which would not have been necessary but for Wells Fargo's failure to properly respond to each of the RFIs.

## COUNT TWO:

### MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.35(e), 12 U.S.C. §§ 2605(k)(1)(C) and (E) (Failure to timely and properly respond to notices of error)

60.     Plaintiff restates and incorporates his statements and allegations contained in paragraphs 1 through 59 in their entirety, as if fully rewritten herein.

61.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

62.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

63.     12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

1.   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact

information, including a telephone number, for further
assistance; or

2. Conducting a reasonable investigation and providing the
borrower with a written notification that includes a statement
that the servicer has determined that no error occurred, a
statement of the reason or reasons for this determination, a
statement of the borrower's right to request documents relied
upon by the servicer in reaching its determination, information
regarding how the borrower can request such documents, and
contact information, including a telephone number, for further
assistance.

64. 12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related
mortgage shall not ... fail to take timely action to respond to a borrower's requests to correct
errors relating to allocation of payments, final balances for purposes of paying off the loan, or
avoiding foreclosure, or other standard servicer's duties."

65. Standard servicer duties are those "typically undertaken by servicers in the
ordinary course of business", are not limited to duties that constitute "servicing", and include:
[D]uties to comply with investor agreements and servicing program guides, to advance payments
to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance
(e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding
mortgage loan problems, to report data on loan performance to investors and guarantors, and to
work with investors and borrowers on options to mitigate losses for defaulted mortgage loans.

66. 12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related

mortgage shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

67.     NOE #1 and NOE #2 (collectively, the "NOEs") each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). Plaintiff sent each of the NOEs to Wells at the Designated Address and Wells Fargo received each of the NOEs at the Designated Address within a week of mailing.

68.     Through Response to NOE #1, Wells Fargo failed to state whether or not an error occurred regarding the alleged failure to respond to any of the RFIs.

69.     Further, through Response to NOE #1, Wells Fargo did not fully correct the alleged error regarding their failure to respond to the RFIs as they did not provide all of the information requested through the same or otherwise provide a valid reason as to why they were not required to do so pursuant to 12 C.F.R. § 1024.36(f).

70.     Specifically, through Response to NOE #1, Wells failed to provide:

  a. The identity of the owner and/or investor for the Loan as originally requested through RFI #1;

  b. Any information related to the value of or any valuations of the Home performed by Wells Fargo as originally requested through RFI #1;

  c. Information related to the loss mitigation options and programs available on the Loan as originally requested through RFI #2; and,

  d. A statement of the amount necessary to pay the Loan in full within the applicable timeframe as originally requested through RFI #3.

71.     Wells Fargo did not fully correct the errors which they claimed to in Response to

14

NOE #1 or otherwise failed to reasonably investigate each of the errors alleged through NOE #1.

72.     Because of Wells Fargo's failure to properly respond to NOE #1, Plaintiff incurred fees and costs to have counsel prepare and send NOE #1 on his behalf to Wells Fargo at the Designated Address, which would not have been necessary but for Wells Fargo's failure to properly respond to the RFI.

73.     As Wells Fargo requested an extension of time to respond to NOE #2, pursuant to 12 C.F.R. §§ 1024.35(e)(3)(i)(C) and 1024.35(e)(3)(ii), Wells Fargo was required to properly respond to NOE #2 within forty-five days excluding legal public holidays, Saturdays, and Sundays.

74.     Wells Fargo failed to comply with 12 U.S.C. § 2605(k)(1)(C) in failing to take timely action to respond to Plaintiff regarding mortgage loan problems in relation to each of the NOEs, which is a standard servicer duty.

75.     Wells Fargo failed to comply with 12 U.S.C. § 2605(k)(1)(E) by neglecting its obligations pursuant to 12 C.F.R. § 1024.35(e) for each of the NOEs.

76.     Wells Fargo's failure to properly respond to each of the NOEs constitutes at least two (2) clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E), one such violation for each of the NOEs to which Wells Fargo failed to properly respond.

77.     Wells Fargo's failure to correct the errors noticed through the NOEs or failure to otherwise timely and properly respond to the same directly and proximately caused the Plaintiff to suffer actual damages, functionally being held by Wells Fargo, and suffering extreme emotional distress.

78.     Wells Fargo's actions are believed to be part of a pattern and practice of behavior

in conscious disregard for Plaintiff' rights.

79.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

80.     Additionally, Plaintiff request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:

## BREACH OF CONTRACT

81.     Plaintiff restates and incorporates his statements and allegations contained in paragraphs 1 through 80 in their entirety, as if fully rewritten herein.

82.     The note and mortgage is a contract between the Parties.

83.     Wells Fargo breached the Agreement by failing to properly account for Plaintiff's payments.

84.     Wells Fargo breached the contract in bad faith which is evidenced Wells Fargo's failure to take to correct its breach despite repeated notice of the same through the NOEs and otherwise.

85.     As pled, *supra*, Plaintiff has been harmed by, and continue to suffer from harm resulting from Wells Fargo's breach as described in this Complaint.

86.     In addition, Wells Fargo's intentional and outrageous conduct has caused Plaintiff to suffer severe emotional distress driven by fear and uncertainty in his financial well-being and his obligations which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant harm.

87.     Plaintiff' extreme emotional distress is a foreseeable result of Wells Fargo's actions.

16

88. As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## COUNT FOUR:

## VIOLATION OF THE ILLINOIS FRAUD ACT, 815 ILCS 505/2

89. Plaintiff restates and incorporates his statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten herein.

90. The Illinois Fraud Act at 815 ILCS 505/2, states, in relevant part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

91. The Illinois Fraud Act at 815 ILCS 505/2, states, in relevant part:

Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper.

92. Wells Fargo violated the Illinois Fraud Act, specifically 815 ILCS 505/2, by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their attempts to collect funds were uncollectible under the Bankruptcy Code, as further described *supra* .

93. Wells Fargo's conduct occurred during the course of trade or commerce.

94.     Wells Fargo, through its conduct, intended that Plaintiff would rely on its misrepresentations.

95.     Wells Fargo's conduct, as detailed, *supra* , constitutes unfair conduct under the Illinois Consumer Fraud Act.

96.     Wells Fargo's unfair and deceptive conduct was immoral, unethical, unscrupulous and oppressive, especially in that Wells Fargo was, at all times relevant, in a position of strength in relation to Plaintiff,

97.     Wells Fargo owed Plaintiff a duty of good faith and fair dealing. Wells Fargo owed Plaintiff a fiduciary duty as servicer. Wells Fargo had discretion with respect to its handling of the Settlement.

98.     Wells Fargo's conduct violates public policy, including, RESPA, because, as detailed *supra* , Wells Fargo used false and deceptive representations in connection with its collection of the Loan and administration of the Settlement.

99.     As pled, *supra*, Plaintiff has been harmed by, and continue to suffer from harm resulting from, Wells Fargo's unfair and deceptive practices in making misrepresentations described herein.

100.    In addition, Wells Fargo's intentional and outrageous conduct has caused Plaintiff to suffer severe emotional distress driven by fear and uncertainty in his financial well-being and their obligations which has resulted in loss of sleep, anxiety, depression, embarrassment, significant conflict in his personal relationships, and other significant harm.

101.    As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## COUNT V

## VIOLATION OF THE BANKRUPCY DISCHARGE, THE CONFIRMED CHAPTER 13 PLAN AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1

102.     Plaintiff restates and incorporates his statements and allegations contained in paragraphs 1 through 101 in their entirety, as if fully rewritten herein.

103.     Wells did not file any such Notice of Post Petition Mortgage Fees, Expenses and Charges pursuant to Federal Rule of Bankruptcy Procedure 3002.1(c) in regards to real estate taxes paid, insurance paid or any other expenses paid including attorney fees during the Bankruptcy regarding the real estate taxes and insurance during the Bankruptcy or any time or thereafter.  As a result, pursuant to Federal Rules of Bankruptcy Procedure Wells was not entitled to the added charges related to real estate taxes (real estate tax years 2013 through 2016) in the amount of $42,350.43 and property insurance of $6,150.00 to the loan of the Plaintiff incorrectly.

104.     Wells attempted to collect and enforce the old pre-bankruptcy mortgage as if it was not subject to Federal Rule of Bankruptcy Procedure 3002.1.   Wells continued to bill the Plaintiff even though in never complied with Federal Rules of Bankruptcy Procedure 3002.1.

105.     This problem is enhanced as this is the Plaintiff's residence.

## COUNT SIX:

## UNJUST ENRICHMENT

106.     Plaintiff restates and incorporates his statements and allegations contained in paragraphs 1 through 105 in their entirety, as if fully rewritten herein.

107.     The note and mortgage is a contract between the Parties which requires Wells Fargo to account for either apply and post payments to Plaintiff's account or return those fund

108.     From December 2017 to July 2019 (17 months), the Debtor made payments to Wells Fargo of $1,451.86 each in the aggregate amount of $24,681.62 which although attempted were not returned to the Plaintiff and the Plaintiff does not have possession of these funds. These are funds paid by the Plaintiff to Wells Fargo and which remain in the possession Wells Fargo and were not turned over to the subsequent servicer.

109.     Wells Fargo remains in possession of $24,681.62 which was not posted or applied to Plaintiff's account and rightfully belongs to the Plaintiff.

110.     Wells Fargo has failed to correct possession of the $24,68162 which is evidenced Wells Fargo's failure to take to correct its breach otherwise causing Wells Fargo to be unjustly enriched.

111.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE** , Plaintiff Patrick Inorio prays that this Court grant judgment in his favor and against Defendant Wells Fargo Bank, N.A., and award the following

     a.  Actual damages from Wells Fargo Bank, N.A. in an amount to be determined at trial for the allegations contained in Counts One through Six and Entry of an Order compelling Wells to realign and modify their loan files and computer records to bring the loan's economic characteristics in line with Count Five;

     b.  Statutory damages from Wells Fargo Bank, N.A. in the amount of Two Thousand Dollars ($2,000.00) per each violation contained in Counts One and Two for a total of at least Ten Thousand Dollars ($10,000.00);

     c.  Statutory damages from Wells Fargo Bank, N.A. as to Count Four;

d.  Additional damages from Wells Fargo Bank for Plaintiff's extreme emotional distress as to Counts One to Six and Entry of an order compelling Wells to reimburse the Plaintiff for actual (including attorney fees) and punitive damages incurred as a result of the actions of Wells Fargo in Counts One through Six;

e.  Reasonable attorneys' fees and costs from Wells Fargo Bank to Plaintiffs to Counts One through Six; and,

f.  Such other relief which this Court may deem appropriate.

Dated:  May 28, 2020

Respectfully Submitted,
/s/ Paul M. Bach
Paul M. Bach, Esq. ARDC# 6209530
Counsel for Plaintiff
Bach Law Offices, Inc.
PO Box 1285
Northbrook, IL 60065
847-564-0808
pnbach@bachoffices.com
paul@bachoffices.com