UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK INORIO<br>Plaintiff | CASE NUMBER 1:20-cv-3157 |
| vs. | COMPLAINT |
| WELLS FARGO BANK, N.A.<br>Defendant | JURY TRIAL DEMANDED |

**RESPONSE OF PLAINTIFF PATRICK INORIO TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS**

Plaintiff Patrick Inorio ("Plaintiff"), through counsel, responds to the motion to dismiss (D.E. 16 & 17 or the "Motion") filed by Defendant Wells Fargo Bank, N.A. ("WF"), as follows:

**FACTUAL BACKGROUND**

Plaintiff asserts six claims against WF for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*, and Regulation X, 12 C.F.R. § 1024.1, *et seq.* (RESPA) (Counts One and Two), breach of contract (Count Three), and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA") (Count Four), Violation of the Bankruptcy Discharge, the Confirmed Chapter 13 Plan and Federal Rule of Bankruptcy Procedure 3002.1 (Count V) and Unjust Enrichment (County VI). *(D.E.1)*

**LEGAL STANDARD**

The Supreme Court instructs that to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-556; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("Plaintiff must give enough details about the subject matter of the case to present a story that holds together."). All facts alleged

1

by a plaintiff must be taken as true and all reasonable inferences from those facts must be made in the plaintiff's favor, although conclusory allegations that merely recite elements of a claim are not entitled to this presumption. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Complaint meets and exceeds these standards.

## ARGUMENT

A.   **WF FAILED TO PROPERLY RESPOND TO REQUESTS FOR INFORMATION**

12 C.F.R. § 1024.36(a) defines a request for information as "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 U.S.C. § 2605(e)(1)(B) defines a "qualified written request" (QWR) as: [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Although similar, 12 C.F.R. § 1024.36(a) makes it clear that a request for information is not the same as qualified written request, stating "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." *Messina v. Green Tree Servicing, Ltd. Liab. Co.*, 210 F. Supp. 3d 992, 1007 (N.D. Ill. 2016) (quoting the Official Interpretations) "A qualified written request is just one form that a written notice of error or information request may take. Thus, the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request."); *Pollack v. Seterus, Inc.*, Civil Action No. 17-60475-Civ, 2017 U.S. Dist. LEXIS 202827, at *9 (S.D. Fla. Dec. 7, 2017); S*t.*

2

*Claire v. Ditech Fin. LLC*, No. 1:17-CV-03370-AT-JFK, 2018 U.S. Dist. LEXIS 135098, at *8 (N.D. Ga. Apr. 26, 2018).

The only valid restrictions on information that can be requested are located in 12 C.F.R. § 1024.36(f), which provides: a servicer is not required to comply if it determines that a request for information is duplicative; asking for confidential, proprietary, or privileged information; irrelevant; overbroad or unduly burdensome; or untimely. *Id.* If a servicer decides any of these five reasons exists, it must send a notice to the borrower explaining its determination. 12 C.F.R. § 1024.36(f)(2). There is no exception for "information not related to servicing." *See Pollack*, 2017 U.S. Dist. LEXIS 202827, at *10.

The CFPB specifically addressed the "servicing" issue in its commentary on 12 C.F.R. § 1024.36(f): "While the final rule does not require that servicers undertake the information request procedures in § 1024.36(c) and (d) for oral submissions, ***it does not limit information requests to those related to servicing***." 78 FR 10696, 10761. (emphasis added). Therefore, a servicer is required to respond to "any written request for information" and the scope of 12 C.F.R. § 1024.36(a) is not limited to "requests relating to servicing." *Pollack*, 2017 U.S. Dist. LEXIS 202827, at *8-9; *St. Claire*, 2018 U.S. Dist. LEXIS 135098, at *11.

Plaintiff sufficiently states that each RFI were valid requests for information because each includes Plaintiff's name, enabled WF to identify their mortgage loan account, and requested information related to their mortgage loan. (D.E. 1, ¶¶ 21-24).

RFI #1 requests information related to the transactions on the Loan, the amount needed to cure any delinquency on the Loan, any prior loss mitigation agreements offered. (D.E. 1-2).

RFI #2 requests information related to loss mitigation options in which the investor participates. (D.E. 1-2). Assuming, *arguendo*, that RFI #2 is required to seek information related to servicing of the Loan, contrary to WF's claims otherwise, loss mitigation is related to the servicing of the Loan. "Servicing a loan... goes well beyond accepting and making payments." *Coppola v. Wells*

3

*Fargo Bank, N.A. (In re Coppola)*, Nos. 17-14944 VFP, 17-1621 VFP, 2018 Bankr. LEXIS 3383, at *19 (Bankr. D.N.J. Nov. 1, 2018). "[D]uties (and rights) expressly ascribed to a 'servicer' in the loss mitigation process must constitute the servicing of a mortgage loan." *Id.* at *29. "[T]he definition of servicing must be read to include the duties and obligations specifically described in the various sections of Regulation X, including (without limitation) §§ 1024.35, 1024.36, and 1024.41." *Id.* at *20-21. In *St. Claire v. Ditech Fin., LLC*, the Northern District of Georgia examined how the amendments to RESPA's Mortgage Servicing Rules in Regulation X expanded the duties required of a servicer:

> [T]he Dodd-Frank Act amended § 2605 of RESPA to broaden its scope … Section 2605(k)(1)([C]) provides that servicers shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or ***other standard servicer's duties***," or [and Section 2605(k)(1)(E) provides that servicers shall not] "fail to comply with ***any other obligation*** found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."
>
> As the CFPB explained in issuing the 2013 amendments to RESPA's Mortgage Servicing Rules in Regulation X ...
>> … ***duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also*** those duties that are defined as "servicing" by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. These standard servicer duties are not limited to duties that constitute "servicing," as defined in this rule, and include, for example ***… work with investors and borrowers on options to mitigate losses for defaulted mortgage loans***.
>
> … The CFPB specifically considered loss mitigation "related" to servicing when it promulgated this section. More, the loss mitigation requirements of Regulation X impose requirements on servicers specifically — not loan originators, or loan owners. In short, how can a request for information regarding loss mitigation measures not be considered "related" to loan servicing when the regulations make plain that servicers have significant obligations to engage borrowers in the loss mitigation and foreclosure avoidance process and when in practice servicers are almost always the primary points of contact for borrowers seeking such assistance?

No. 1:17-cv-3370-AT-JFK, 2018 U.S. Dist. LEXIS 219661, at *12-16 (N.D. Ga. Sep. 21, 2018) (citing 78 Fed. Reg. at 10739). Loss mitigation issues fall under the statutory umbrella of Subpart C

4

of Regulation X entitled "Mortgage Servicing". 12 C.F.R. §§ 1024.30, *et seq.* The statutory framework intended to include errors related to loss mitigation as actionable, as three of the ten expressly defined errors directly relate to loss mitigation. *See* 12 C.F.R. §§ 1024.35(b)(7), (9)-(10).

RFI #3 requests a life of loan transaction history for the Loan and a payoff statement for the Loan, and reiterates the request in RFI #1 for the amount necessary to cure any delinquency on the Loan. (D.E. 1-2).

WF received each of the RFIs at the address designated for the receipt of such correspondence on or prior to December 8, 2017. (D.E. 1, ¶ 23; 1-2). WF was required to respond within thirty (30) business days of their receipt of each of the RFIs. 12 C.F.R. § 1024.36(d)(2)(i)(B). WF did not provide any response to the RFIs. (D.E. 1 ¶ 24; D.E. 1-2). WF states in its Memorandum that Plaintiff does not allege in ¶ 24 that no response was sent to the RFI's. WF is incorrect. A plain reading of ¶ 24 indicates that no response was sent. WF is misinterpreting what was meant by a "substantive response." A lack of "substantive response" is no Response and in case indicates no Response was received within the applicable statutory deadlines. Additionally, the alleged Responses attached by WF dated December 15 and 28, 2017 which are attached to the Memorandum as Exhibits F & G were never received and as result not an alleged fact in the pending Motion to Dismiss as all properly pled facts are admitted as true for the purpose of the Motion. ¶ 24 of the Complaint says there was no response and as a result there was no Response whatsoever by WF.

Even if, as WF claims, requests contained in the RFIs did not require a substantive response, the regulations strictly provide that written notice needs to be provided within five (5) business days of making such a determination. 12 C.F.R. § 1024.36(f)(2) ("If a servicer determines that, pursuant to this paragraph (f), the servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section, the servicer shall notify the borrower of its determination in writing not later than five days after making such determination. The notice to the borrower shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination.") If WF

5

desired to comply with Regulation X by objecting to the requests contained in the RFIs, the proper time to do so would have been within the deadlines established by 12 C.F.R. § 1024.36, not after Plaintiffs incurred costs in sending a notice of error to seek WF's response or in the Motion. That is, regardless of whether WF ever provided a response to the RFIs, Plaintiff clearly alleges, and the exhibits corroborate, that WF did not send any such response in a timely manner as required by 12 U.S.C. §2605 and 12 C.F.R. § 1024.36.

WF claims to absolve themselves of their duty to provide a response to the RFIs was that the requests were "overbroad"; *see also* 12 C.F.R. § 1024.36(f)(1)(iv). However, 12 C.F.R. § 1024.36(f)(1)(iv) explicitly provides that "[t]o the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information." *Id.* Information was requested through the RFIs that could not be deemed overbroad, yet it was not provided, such as the identity of the investor of the loan, a request for which has its own expressly stated response deadlines. 12 C.F.R. § 1024.36(d)(2)(i)(A).

In paragraphs 9 to 16 of the Memorandum, WF attempts to justify a proper Response to the RFIs through separating out the type of information provided. However, the alleged Responses by WF were never made or at least never received by counsel or the borrower. To rely on such a response as compliance with the statutory requirements is complete nonsense.

Viewed in a light most favorable to Plaintiff, as is required, the allegations of the Complaint are sufficient to allow them to state claims for violations of 12 C.F.R. § 1024.36. WF's motion to dismiss Count One of the Complaint should be denied.

**B.      WF FAILED TO PROPERLY RESPOND, PERFORM REASONABLE INVESTIGATIONS AND/OR CORRECT ERRORS**

Plaintiff alleges that the NOEs were written notices that assert errors, included Plaintiff's name, and enabled WF to identify Plaintiff's loan account thereby meeting the statutory definitions of notices of error. (D.E. 1, ¶¶ 25-33, 1-3 and 1-4); *see also*, 12 C.F.R. § 1024.35(a).

Regarding NOE #1, WF ignores the failure to respond to the RFIs and in NOE #2 failed to correct the addition of Real Estate Taxes to Plaintiff's account in violation of the Bankruptcy Rules. WF did not respond to NOE #1 or NOE #2. (D.E. 1, ¶¶ 33-33).

Assuming, *arguendo,* that portions of NOE #1 requests contained would not require a substantive response, similarly to RFIs the regulations strictly provide that written notice needs to be provided within five (5) business days of making such a determination. 12 C.F.R. § 1024.36(g)(2) ("If a servicer determines that, pursuant to this paragraph (g), the servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section, the servicer shall notify the borrower of its determination in writing not later than five days … after making such determination. The notice to the borrower shall set forth the basis under paragraph (g)(1) of this section upon which the servicer has made such determination.") If WF desired to comply with Regulation X by objecting to the errors contained in the NOEs, the proper time to do so would have been within the deadlines established by 12 C.F.R. § 1024.35, not after Plaintiff incurred costs in sending additional notices of error to seek WF's response or in a Motion before this Court.

WF states NOE #2 does not relate to servicing. (D.E. 16, pp. 7-8). This is disingenuous, however, as violation of the Bankruptcy Rules related directly to actions taken by WF in the servicing of Plaintiff's loan and required actions by WF as servicer to effectuate such as removing an escrow account, crediting property tax refunds, and refunding amounts held in suspense. The servicing aspects were inextricably intertwined with one another with funds being owed to Plaintiffs coming from funds held by WF in its capacity as servicer. Clearly, this error pertained to servicing and was a validly alleged as an error under 12 C.F.R. § 1024.35(b)(11).

7

WF also alleges that damages are not properly alleged. ¶¶ 34 to 40 specifically alleged damages which are then incorporated into each Count. As a result, these damages are part of every cause of action. Most importantly as to damages, in ¶34 it is alleged that Plaintiff made payments which were not posted to the Plaintiff's account in the amount of $24,681.62 that are still in possession of WF. WF does not discuss this issue when alleging that damages are not properly alleged as well.

WF has not challenged whether they were obligated to properly respond to the numerous errors alleged through the NOEs that went unmentioned in the Motion and Plaintiffs should therefore be able to proceed with prosecution of such claims. Whether aspects of the NOEs required a response is irrelevant as to whether Count Two should be dismissed.

C.     **BREACH OF CONTRACT HAS BEEN PROPERLY PLED IN COUNT THREE.**

As stated by the Seventh Circuit in *Wigod vs. Wells Fargo Bank, N.A.,* 673 F.3d 547 (7th Cir. 2012), the required elements of a breach of contract claim in Illinois are the standard ones of common law:"(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." Citing *Association Benefit Services, Inc. v. Caremark RX, Inc.,* 493 F.3d 841,849 (7th Cir. 2007), quoting *MC Baldwin Fin. Co. v. DiMag-gio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. 2006). In the Memorandum, WF does not appear to contest the basis contract principles of offer and acceptance and consideration and appears to only question that it did not breach the note and mortgage between the parties which no party appears to question.

Plaintiff alleges in ¶3 that WF is the prior servicer of the note and mortgage between WF and Plaintiff. Based on comments by WF in ¶ 26 of the Memorandum that refer to ¶34 of the Complaint, there is no dispute that WF is currently holding $24,681.62 which does not belong to WF but belongs to the Plaintiff. Receiving funds as a Servicer and not applying those funds and then keeping those funds is a violation of the basic contract agreement between the parties.

A contractual violation is that WF charged Plaintiff for Real Estate Taxes that should not have charged to Plaintiff in violation of Federal Rule of Bankruptcy Procedure 3002.1. WF notes in the Memorandum ¶ 2, that the Chapter 13 Trustee sent a Notice pursuant to Federal Rule of Bankruptcy Procedure 3002,1(f) on March 13, 2017 and that WF sent a Response pursuant to Federal Rule of Bankruptcy Procedure 3002.1(g). However, nowhere in the Complaint, Federal Rule of Bankruptcy Procedure 3002.1(f) and (g) mentioned or attempted to be used except for the fact that a document is filed. In ¶18, Plaintiff states the violation of Federal Rule of Bankruptcy Procedure 3002.1 relates to real estate taxes paid from 2013 to 2016 by WF. The section in question is Federal Rule of Bankruptcy Procedure 3002.1(c) which is quoted in ¶19 and requires that the Notice be provided within 180 days of the expense being paid. This did not happen. WF seems content to discuss completely a different part of Federal Rule of Bankruptcy 3002.1 to confuse and mislead this Court. These facts are incorporated by ¶81 into Count III. In essence, WF added charges to Plaintiff's account that were improper and could not have been added in violation of the note and mortgage.

**D.  PLAINTIFF HAS ALLEGED WF COMMITTED DECEPTIVE ACTS AND PRACTICES DISTINCT FROM THE UNDERLYING BREACH OF CONTRACT CLAIM IN COUNT IV.**

To state a claim under the ICFA, a plaintiff must allege: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practices; (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and (4) the deceptive or unfair practice was the proximate cause of the plaintiff's actual damage. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 835 N.E.2d 801, 850, 296 Ill. Dec. 448 (Ill. 2005). Plaintiff's Complaint demonstrates all four required elements to proceed under ICFA. (DE 1, ¶¶ 114-123.)

Deceptive acts or practices are defined as "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." *Saccameno v. Ocwen Loan Servicing*, No. 15 CV 1164, 2019 U.S. Dist. LEXIS

9

36245, at *22-23 (N.D. Ill. Mar. 1, 2019). "To show that something is an 'unfair practice' under the ICFA, the practice must offend public policy; be immoral, unethical, oppressive, or unscrupulous; or cause substantial injury to consumers." *Id.* at *26-27. "A practice offends public policy under ICFA where it 'violates statutory or administrative rules establishing a certain standard of conduct.'" *Id.* at *28. "A 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." A*very v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005).

Plaintiff has alleged that WF engaged in unfair and deceptive acts and practices distinct from the underlying breach of contract. Plaintiff specifically states that all allegations contained in "paragraphs 1 through 57" of the Complaint are incorporated into Count Four. (D.E. 1, ¶ 111) and that WF not only breached the loan, but used false and deceptive representations both in connection with its collection of the loan and the administration of the settlement. (D.E. 1, ¶ 121). Plaintiff further alleges that conduct constituting unfair conduct under ICFA included incorrect versions of IRS Forms 1098 and 1099 with the intent that Plaintiffs would rely upon the same. (D.E. 1, ¶¶ 116-117).

While Plaintiff's ICFA claim arises from some of the same facts as are alleged in Plaintiff's breach of contract claim, the alleged conduct in violation of ICFA goes beyond mere breach and addresses WF's conduct and misrepresentations regarding the NOEs and the responses to the same, or lack thereof. Plaintiff has alleged systematic and repeated conduct by WF in connection with the loan and the settlement and have sufficiently alleged a claim under ICFA rather than just "artfully" restating a breach of contract claim.

Viewed in a light most favorable to Plaintiff, as is required at this early stage of the litigation, the allegations of the Complaint are sufficient to allow them to state claims for a violation of ICFA. WF's motion to dismiss Count Four of the Complaint should be denied.

**E. PLAINTIFF HAS ALLEGED WF COMMITTED VIOLATION OF THE BANKRUPTCY CODE THAT IS PROPER BEFORE THIS COURT.**

Plaintiff would disagree that Count V has anything to do with res judicata, as WF is referring to the incorrect portion of Federal Rule of Bankruptcy Procedure 3002.1. As stated under Count III and the discussion regarding Breach of Contract, Plaintiff is not attempting in any way to say that WF has violated the Discharge Injunction based on Federal Rules of Bankruptcy Procedure 3002.1(f, g & h) and discussed by WF in the Memorandum. The violation of the Discharge Injunction only comes about because WF did not comply with Federal Rules of Bankruptcy Procedure 3002.1(c). Nothing in the Complaint alleges that WF violated the Discharge Injunction by collecting or asserting that current mortgage payments were due at the time the Discharge was entered. In actuality, these two parts of Federal Rule of Bankruptcy Rules are independent and have nothing to do with each other.

28 *U.S.C.S.* § 1334(b) states that with the exceptions of claims that arise out of section 327 of title 11 and relates to the employment of professionals. Notwithstanding an action of congress that confers exclusive jurisdiction on a court other that the District Court, the District Courts shall have original, but not exclusive, jurisdiction of all civil proceedings which arise under title 11 on the United States Code.

The federal district courts, and by reference, the bankruptcy courts, have original of all cases under Title 11 of the United States Code. Therefore, the District Court for the Northern District of Illinois has original jurisdiction of all civil proceedings arising under Title 11 within this District. 28 *U.S.C.S.* § 1334. See also *In re Mid-City Parking, Inc.*, 332 B.R. 798, 801, 2005 Bankr. LEXIS 2080, *1, 45 Bankr. Ct. Dec. 173.

Defendant seeks dismissal of Plaintiff's ICFA and Bankruptcy claims looking to *Booker v. New Penn Fin., LLC*, 575 B.R. 823, 827 (N.D. Ill. 2017), *Cox v. Zale Delaware, Inc.*, 242 B.R. 444, 449–50 (N.D. Ill. 1999), 239 F.3d 910 (7th Cir. 2001), and *Twomey v. Ocwen Loan Servicing, LLC*,

11

2016 WL 4429895, at *2 (N.D. Ill. Aug. 22, 2016). The case at Bar is easily distinguishable from these cases. These cases can easily be differentiated from the case at bar.

- *Booker v. New Penn Fin., LLC*, 575 B.R. 823, 827 (N.D. Ill. 2017)

In this case, the debtor, Pamela Booker, sued New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing, MTGLQ Investors, L.P. ("New Penn") and its attorneys for alleged violations of the FDCPA ICFA. The debtor settled with the attorneys and New Penn filed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 20. The District Court Judge (the Honorable Gary Feinerman) granted the Motion to Dismiss with leave to replead.

The first primary difference is in *Booker*, Judge Feinerman was analyzing a Stay Violation case pursuant to 11 USC 362 in an active Chapter 13 case. Judge Feinerman quotes:

> "Time and time again, courts in this district have held that the Bankruptcy Code preempts the field when it comes to remedying violations of injunctive orders issued by bankruptcy courts.") (citing cases)."

Judge Feinerman also discussed that a Stay Violation case relates directly to property of the Bankruptcy Estate. These arguments do not apply to the case at bar because: 1) The Plaintiffs' underlying bankruptcy case was closed at the time of WF's wrongful acts; 2) The confirmation in the underlying bankruptcy case order does not contain any injunctive language; 3) The allegations in Plaintiffs Complaint are stemming from the violation of Federal Rule of Bankruptcy Procedure 3002.1(c) and NOT (f, g and h relating to a final cure) and not the confirmation order itself; and 4) As the Bankruptcy is closed, there is no bankruptcy estate.

- *Cox v. Zale Delaware, Inc*., 242 B.R. 444, 449–50 (N.D. Ill. 1999)

In this case Debtor, entered into reaffirmation agreement with a creditor. The creditor did not file the reaffirmation agreement with the court, but debtor paid the debt, believing that the reaffirmation agreement had been filed. The debtor claimed that the creditor had violated 11 U.S.C.S. §§ 524 and 362, and alleged unjust enrichment. The bankruptcy court dismissed, holding that no

implied private right of action existed for violations of § 524(c), that debtor failed to allege the required element of harassment to constitute a violation of § 362, and that debtor's state law unjust enrichment claim was preempted by the Bankruptcy Code. The Court analyzed the expansive reach of the Bankruptcy Code stating it virtually preempts all claims which allege misconduct in Bankruptcy proceedings. *Id. at 450.* This Court looked to several different cases (*In re Lenior*, 231 B.R. 662, 1999 WL 135067, *14 (Bankr. N.D. Ill. 1999); and *Pereira v. First North American National Bank*, 223 B.R. 28, 31-32 (1998). In the Courts statement explaining how the cases apply to the pleadings before her, the opinion states, "state law consumer fraud counts were preempted by the Bankruptcy Code, whose "expansive reach . . . preempts virtually all claims relating to alleged misconduct in the bankruptcy courts")" and "that Bankruptcy Code preempted state law claims as Code provides a remedial scheme for addressing violations of §§ 362 and 524, including the filing of civil contempt proceedings under the bankruptcy court's inherent contempt power…"

      These quotes in and of themselves illustrate the difference between the case at bar today and the case that was presented to s Court in 1999. First, the Complaint alleges no wrongdoing of WF within the Bankruptcy Court itself. The wrongdoing on the part of WF was directly related to a breach of plan terms that WF was bound to contractually. The premise of the case at bar is not a violation of the Automatic Stay pursuant to 11 USC 362 or the Discharge Injunction pursuant to 11 USC 524. The case relates to the misapplication of payments, not an injunctive order. The case at bar is an exception to the general rule of preemption.

- *Twomey v. Ocwen Loan Servicing, LLC*, 2016 WL 4429895, at *2 (N.D. Ill. Aug. 22, 2016)

      In this final case addressed by SPS, Plaintiff James Twomey claimed that Defendant, Ocwen Loan Servicing LLC's violated the Telephone Consumer Protection Act ("TCPA"), 11 U.S.C. §§ 524, ICFA, and other federal statutes. The honorable John Z. Lee granted a Motion to Dismiss pursuant to 12(b)(6). Judge Lee stated that, "time and time again, courts in this district have held that the

Bankruptcy Code preempts the field when it comes to remedying violations of injunctive orders issued by bankruptcy courts." In his analysis, Judge Lee refers to *Cox* Supra. Judge Lee also discusses *Holloway v. Household Auto. Fin. Corp*., 227 B.R. 501 stating the Bankruptcy Code contemplates and provides for a comprehensive scheme by which to guard against fraud and remedy it.

However, in the case at bar, this argument also fails. The "fraud" alleged in Plaintiffs' ICFA count goes for beyond any bankruptcy issue. WF charged the Plaintiff for Real Estate Taxes that WF was prohibited from doing so and failed the apply funds and held the funds for its own benefit. All of these actions made by WF were intentionally false and none of them have anything to do with the Plaintiffs bankruptcy case.

Aa stated, this case is not premised upon a violation of the Bankruptcy Code. The premise of all six counts is the breach of an agreement and the failure of WF to properly account service the Plaintiff's account. However, the nature and extent of these actions has absolutely nothing to do with Title 11 and the allegations of wrongdoing is not solely based upon the agreed to terms of repayment.

Plaintiffs brought an action against WF for violations of ICFA. The unfair and deceptive practices of WF were willful and caused significant harm to Plaintiffs. The outrageous conduct of WF goes beyond mailing a statement that shows inaccurate arrears. WF charged amounts not allowed and then transferred the servicing to another servicer which includes is he total balance the amounts WF incorrectly added to the Plaintiff's account.

The caselaw stated by WF all relate to Chapter 13 cases, in which the Debtor is actively making payments for a period of three to five years while the bankruptcy case is open. The case law shared by WF were for violating the stay and they refer to a discharge order. Neither the Automatic Stay or a Discharge Violation directly applies to this case at this time.

It would be a waste of time and money to pursue this case in two different venues and the Bankruptcy Court's limited jurisdiction does not allow for the Bankruptcy Court to hear matters not

directly related to the Bankruptcy proceedings. The Bankruptcy Court cannot hear allegations of violations of Breach of Contract, or anything that stems from the breach of contract – in this case that would be Plaintiff's ICFA.

### F. PLAINTIFF HAS PLED UNJUST ENRICHMENT WAS PLED AS AN ALTERNATIVE BREACH OF CONTRACT

Plaintiff agrees that County Six and Three relating to Breach of Contact are alternatives. Plaintiff has no intention of proceeding on both Counts. The point was that if the Count on Breach of Contract would fail that WF should not be able to keep the $24,681.62 which does not belong to WF as well as the amount improperly added to Plaintiff's account by WF for Real Estate Taxes that WF did not comply with Federal Rules of Bankruptcy Procedure 3002.1 (c).

### CONCLUSION

Plaintiff has sufficiently pleaded all of their claims against WF and the Motion should therefore be denied in its entirety and in the alternative in the event that the Court enters an Order dismissing any Count of the Complaint for leave to file an Amended Complaint based on any Order the Court enters.

**WHEREFORE**, Plaintiff, Patrick Inorio, respectfully requests this Court deny Defendant Wells Fargo Bank, N.A.'s partial motion to dismiss, and for all other relief this Court may deem just and proper.

Respectfully submitted,
*/s/ Paul M. Bach*
**BACH LAW OFFICES**
P.O. Box 1285
Northbrook, IL 60065
Phone: 847-564-0808
paul@bachoffices.com