```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

| | |
|---|---|
| Patrick Inorio, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) No. 20-cv-3157 |
| | ) |
| | ) |
| Wells Fargo Bank, N.A. | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>Memorandum Opinion and Order</u>

Plaintiff Patrick Inorio is a borrower under a mortgage loan on a property located in Bartlett, Illinois. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") was the servicer of the loan. Mr. Inorio brings the instant action against Wells Fargo for purported violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), for violations of the Bankruptcy Code, and under several state-law theories for relief. Wells Fargo has moved to dismiss the six-count complaint in its entirety [16]. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

I.

In reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

I "accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face" after conclusory allegations are disregarded. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678– 79 (2009)).

In 2009, Mr. Inorio signed a thirty-year promissory note for $274,346 with Wells Fargo, secured by a mortgage on his residence in Bartlett, Illinois. ECF No. 1-1. Mr. Inorio fell behind on his mortgage, and on April 27, 2012, he filed a petition for relief under Chapter 13 of the Bankruptcy Code. *See In re Inorio*, No. 12 B 17295 (Bankr. N.D. Ill. Apr. 27, 2012); ECF No. 17 at 76. Wells Fargo filed a proof of claim on September 10, 2012 asserting that Mr. Inorio was in arrears in the amount of $20,265.42, and that the total amount of the secured claim was $279,977.58.

On March 13, 2017, the bankruptcy trustee filed a notice of final cure payment under Bankruptcy Rule 3002.1(f). ECF No. 17 at 61. Wells Fargo filed a response in which it agreed that Mr. Inorio had cured its prepetition default, but asserted that Mr. Inorio was not current on postpetition payments. *Id.* at 64. On June 29, 2017, the bankruptcy court entered a discharge order providing: "If the trustee has filed and served a notice pursuant

to Bankruptcy Rule 3002.1(f), and no statement is timely filed by the mortgagee in response, the mortgage addressed by the notice is deemed to be fully current as of the date of the notice." *Id.* at 72.

Mr. Inorio asserts that after the discharge, Wells Fargo attempted to collect real estate taxes from tax years 2013 through 2016 in the amount of $42,350.43, as well as property insurance in the amount of $6,150. ECF No. 1 ¶¶ 103-04. He argues that this was improper because Wells Fargo did not file any notices of post-petition mortgage fees, expenses, and charges covering real estate tax or insurance pursuant to Federal Rule of Bankruptcy Procedure 3002.1(c), so those fees, if any, were discharged in the bankruptcy. Mr. Inorio provides that over a period of 17 months, from December 2017 to July 2019, he made periodic payments to Wells Fargo in the aggregate amount of $24,681.62, but those funds were not posted to Mr. Inorio's account and remain in the possession of Wells Fargo (although Wells Fargo is no longer the loan's servicer). ECF No. 1 ¶¶ 34, 109.

On December 4, 2017, Mr. Inorio (through counsel) sent three separate letters titled "Request for Information Pursuant to 12 CFR § 1024.36" to Wells Fargo seeking information about the loan including, for example, the name of the owner of the loan, loss mitigation available for the loan, and the amount necessary to pay the loan in full. ECF No. 1-2. Mr. Inorio alleges that "Wells

3

Fargo failed to provide written notice to Plaintiff containing or consisting of an[y] substantive response to any of the requests contained within the RFIs [Requests for Information] within the applicable statutory deadlines." ECF No. 1 ¶ 24. When Wells Fargo failed to respond, on February 27, 2018, Mr. Inorio sent a "Notice of Error under 12 CFR Section 1024.35" asserting that Wells Fargo had erred both by failing to respond to the RFIs and by attempting to collect real estate taxes and insurance paid during the bankruptcy proceeding. ECF No. 1-3. On August 22, 2018, Mr. Inorio sent a second Notice of Error ("NOE") asserting that Wells Fargo had erred by failing to provide timely, substantive responses to the first NOE or any of the RFIs. ECF No. 1-4.

II.

In Counts I and II, Mr. Inorio asserts violations of RESPA and its implementing regulation, Regulation X, for Wells Fargo's failure to respond to the three RFIs (Count I) and the two NOEs (Count II). See 12 U.S.C. § 2605(k)(1); 12 C.F.R. § 1024.36 (governing required responses to RFIs); 12 C.F.R. § 1024.35 (governing required responses to NOEs). Wells Fargo argues that Mr. Inorio's claims fail because Mr. Inorio failed to allege damages.[1] RESPA provides that a servicer is liable for "any actual

---

[1] Wells Fargo withdrew without prejudice arguments regarding the content of its responses after it became clear that there was a factual dispute regarding whether Wells Fargo responded at all. See ECF No. 28 at 4.

4

damages to the borrower as a result of a failure" to comply with RESPA's provisions. 12 U.S.C. § 2605(f)(1)(A). Accordingly, "[f]ailure to plead actual damages is fatal to a RESPA claim." *Golbeck v. Johnson Blumberg & Assocs., LLC*, No. 16-cv-6788, 2017 WL 3070868, at *10 (N.D. Ill. July 19, 2017) (citing *Lesniak v. Bank of Am., N.A.*, 169 F. Supp. 3d 766, 773 (N.D. Ill. 2015)).

Mr. Inorio asserts that because Wells Fargo did not respond to the RFIs, he was forced to "incur[] fees and costs to have counsel prepare and send NOE #1 on his behalf." ECF No. 1 ¶ 56. Similarly, because Wells Fargo did not respond to NOE #1, Mr. Inorio incurred the expenses to send NOE #2. *See id.* ¶¶ 36, 72. Wells Fargo argues that Mr. Inorio's asserted costs of preparing the NOEs do not qualify as damages sufficient to maintain a RESPA claim. But the only case Wells Fargo cites in support, *Baez v. Specialized Loan Servicing, LLC*, concerned the costs of sending an *initial* RFI, which costs the court excluded because they were not causally connected the alleged RESPA violation: "the postage cost to the borrower [would be] the same" whether the servicer's response was deficient under RESPA or not. 709 F. App'x 979, 983 (11th Cir. 2017). Mr. Inorio, in contrast, is claiming the costs of preparing *subsequent* NOEs, which he specifically alleges "would not have been necessary but for Wells Fargo's failure to properly respond" to prior requests. *See* ECF No. 1 ¶ 56. Such damages are sufficient to state a claim under RESPA. *See Tanasi v.*

5

*CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017) (declining to dismiss RESPA claims asserting "damages stemming from the preparation of later requests, or of notices of error that [plaintiffs] would not have needed to prepare but for [servicer's] alleged violations"); *see also Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 671 (10th Cir. 2018) ("[I]f [servicer's] nonresponse or inadequate response prompted [plaintiffs] to resend a QWR [qualified written request], then the costs of preparing the subsequent QWR are indeed traceable to the violation [as actual damages].").

Separately, with respect to Count II, Mr. Inorio alleges he was damaged when Wells Fargo "fail[ed] to correct the errors noticed through the NOEs or . . . otherwise timely and properly respond" because Wells Fargo continued to collect and retain the funds at issue. *See* ECF No. 1 ¶¶ 34, 77. Such allegations also state a cause of action under RESPA. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246-47 (11th Cir. 2016) ("When a plaintiff plausibly alleges that a servicer violated its statutory obligations [under RESPA] and as a result the plaintiff did not receive a refund of erroneous charges, she has been cognizably harmed."); *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 720 (6th Cir. 2013) (complaint stated RESPA claim where allegations suggested that "because [servicer] failed to correct or

6

investigate the misapplied payments, [plaintiff] paid interest on a higher principal balance than she should have").

Because Mr. Inorio alleged actual damages, I decline to dismiss Count I or Count II.

### III.

Mr. Inorio claims in Count III that Wells Fargo breached the note and mortgage contract by "failing to properly account for Plaintiff's payments." ECF No. 1 ¶¶ 82-83. He alleges that periodically for 17 months, from December 2017 to July 2019, he paid Wells Fargo an aggregate sum of $24,681.62, but these funds were not posted to his account, and "remain in the possession of Wells Fargo and were not turned over to the subsequent servicer." *Id.* ¶ 34.

In the motion to dismiss, Wells Fargo points to provisions of the mortgage that allow the servicer some freedom regarding when and how collected funds must be applied. In particular, it points to Section 1 of the mortgage, which provides:

> Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights . . . , but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of

7

> time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.

ECF No. 1-1 at 4. Wells Fargo seems to suggest that this provision allowed it to retain the $24,681.62 at issue. To the contrary, however, this language allows Wells Fargo to retain payments only for "a reasonable period of time" before those funds must be applied or returned. Mr. Inorio alleges that Wells Fargo has retained his funds without applying them for, in the case of the earliest periodic payments, more than three years, including after Wells Fargo was no longer the servicer of the loan. That is enough to state a claim that Wells Fargo has retained the funds in breach of contract. *See Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 597 (7th Cir. 2009) ("What constitutes a reasonable time [under a contract] given the facts of the case is . . . a question of fact . . . ."). Accordingly, Count III may proceed.

IV.

In Count IV, Mr. Inorio claims a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2. Specifically, he alleges that Wells Fargo used "fraud, deception, and misrepresentation in their attempts to

collect funds [that] were uncollectible under the Bankruptcy Code." ECF No. 1 ¶ 92.

Wells Fargo argues that Count IV must be dismissed because it is preempted by the Bankruptcy Code. I agree. "State law claims are preempted if they 'arise under' the Bankruptcy Code, are 'related to' a bankruptcy case, or 'arise in' bankruptcy." *Sylvester v. Select Portfolio Servicing, Inc.*, No. 18 C 5860, 2019 WL 3573577, at *1 (N.D. Ill. Aug. 6, 2019) (citing *In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010)). "The expansive reach of the Code preempts virtually all claims related to alleged misconduct in the bankruptcy courts." *Cox v. Zale Del., Inc.*, No. 97 C 4464, 1998 WL 397841, at *5 (N.D. Ill. July 13, 1998). A claim that "goes beyond violations of the Code," or allows for relief that "would not conflict with any provision of the Code" is not preempted. *Sylvester*, 2019 WL 3573577, at *2. However, "a state law claim, including an ICFA claim, is preempted by the Bankruptcy Code when the claim would not exist but for some violation of the Code." *Bednar v. Pierce & Assocs., P.C.*, 220 F. Supp. 3d 860, 863 (N.D. Ill. 2016); *see also Sylvester*, 2019 WL 3573577, at *1 (collecting cases).

Here, Mr. Inorio alleges fraud in connection with Wells Fargo's attempts to collect real estate taxes and insurance funds that "were uncollectable under the Bankruptcy Code." ECF No. 1 ¶ 92. Clearly, absent a violation of the Bankruptcy Code, such a

9

cause of action would not exist. Accordingly, I dismiss Count IV as preempted. *See, e.g.*, *Sylvester*, 2019 WL 3573577, at *1-2 (finding preempted ICFA claim alleging servicer sought to collect amounts in excess of those plaintiff was required to pay under bankruptcy plan); *Twomey v. Ocwen Loan Servicing, LLC*, No. 16-cv-0918, 2016 WL 4429895, at *2-3 (N.D. Ill. Aug. 22, 2016) (dismissing as preempted claim that post-discharge collection efforts violated the ICFA).[2]

V.

Count V is styled "Violation of the Bankruptcy Discharge, the Confirmed Chapter 13 Plan and Federal Rule of Bankruptcy Procedure 3002.1." ECF No. 1 at 19. Mr. Inorio contends that Wells Fargo's attempts to collect the real estate taxes and property insurance amounts violated both the bankruptcy discharge and Federal Rule of Bankruptcy Procedure 3002.1.

Wells Fargo argues that a violation of the Bankruptcy Rules is not a stand-alone federal claim. ECF No. 28 ¶ 11. I agree.

---

[2] In his response, Mr. Inorio also attempts to assert additional grounds for his ICFA claim: that Wells Fargo was fraudulent with respect to "administration of the settlement," ECF No. 25 at 10, that Wells Fargo "included incorrect versions of IRS Forms 1098 and 1099," *id.*, and that Wells Fargo "failed to apply funds and held the funds for its own benefit," *id.* at 14. None of these bases were included in the complaint, however, and therefore cannot be used to oppose the motion to dismiss. *See Montoro v. United States*, No. 93 C 7237, 1994 WL 91937, at *2 (N.D. Ill. Mar. 17, 1994) ("It is axiomatic that a plaintiff cannot amend his complaint through a memorandum in response to a motion to dismiss.").

Indeed, neither a violation of a Bankruptcy Rule nor of a Chapter 13 Plan states an independent cause of action. *See, e.g.*, *Long v. Bank of Am., N.A.*, No. 17 CV 2756, 2018 WL 5830794, at *5 (N.D. Ill. Nov. 7, 2018) (claim asserting violation of plan of reorganization dismissed due to lack of private cause of action); *Smith v. Keycorp Morg., Inc.*, 151 B.R. 870, 875-76 (N.D. Ill. 1993) (finding no private right of action for alleged violation of Chapter 13 Plan); *see also Berkley v. Wells Fargo Bank*, No. 15-CV-00749-JSC, 2015 WL 13413346, at *1 (N.D. Cal. June 23, 2015) ("[T]he Court dismisses the third cause of action because Plaintiffs err in bringing an alleged violation of a Federal Rule of Bankruptcy Proceeding as a separate cause of action."); *Raymark Indus., Inc. v. Baron*, No. CIV. 96-7625, 1997 WL 359333, at *8 (E.D. Pa. June 23, 1997) (claim for violation of Federal Rule of Bankruptcy Procedure "cannot stand as an independent cause of action").

Nor am I able to entertain Mr. Inorio's claim to the extent it asserts a violation of the bankruptcy discharge. "'A debtor dunned after' obtaining a discharge can 'ask the bankruptcy judge to hold the other party in contempt of . . . the discharge injunction[,]' [but] [t]hat is the debtor's *only* remedy . . . . [H]e cannot file suit directly in federal district court." *Dore v. Five Lakes Agency, Inc.*, No. 14 CV 6515, 2015 WL 4113203, at *2 (N.D. Ill. July 8, 2015) (citing *Cox v. Zale Del., Inc.*, 239 F.3d

11

910, 916-17 (7th Cir. 2001)); *accord Billups v. PHH Mortg. Corp.*, No. 19 C 5891, 2021 WL 83507, at *4 (N.D. Ill. Jan. 11, 2021); *Gagnon v. JPMorgan Chase Bank, N.A.*, 563 B.R. 835, 847 (N.D. Ill. 2017); *Azari v. Seterus, Inc.*, No. 16-cv-3929, 2016 WL 6070361, at *3 (N.D. Ill. Oct. 17, 2016).

Accordingly, Wells Fargo's motion to dismiss Count V is granted.

## VI.

In Count VI, Mr. Inorio claims Wells Fargo was unjustly enriched when it failed to post or apply the $24,681.62 collected following the bankruptcy discharge. ECF No. 1 ¶¶ 106-111. "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. Ct. App. 2005) (citation omitted). Thus, where the relationship between the parties is governed by contract, "unjust enrichment has no application." *Id.* A plaintiff may plead breach-of-contract and unjust-enrichment claims in the alternative, but where unjust-enrichment claims incorporate allegations of the existence of a contract between the parties, the unjust-enrichment claim should be dismissed. *Gociman v. Loyola Univ. of Chi.*, No. 20 C 3116, 2021 WL 243573, at *5 (N.D. Ill. Jan. 25, 2021).

Here, Mr. Inorio's unjust-enrichment claim not only incorporates the allegations of the similar breach-of-contract

12

claim, ECF No. 1 ¶ 106, but includes a specific allegation that the parties' relationship is governed by contract: "The note and mortgage is a contract between the Parties which requires Wells Fargo to . . . either apply and post payments to Plaintiff's account or return those fund[s]," *id.* ¶ 107. Because there is an adequate remedy at law, Count VI is properly dismissed.

## VII.

For the foregoing reasons, Wells Fargo's motion to dismiss [16] is denied with respect to Counts I-III granted with respect to Counts IV-VI.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: March 1, 2021